## LIABILITY FOR FIRE WHICH SPREAD FROM GASOLINE EXPLOSION.

Common Pleas Court of Morgan County.

CHARLES L. JOHNSON v. H. S. WALKER ET AL, ADMINISTRATORS.

Decided, April 19, 1915.

*Claim for Damages for Loss from Fire—Tank of High Pressure Gasoline Explodes in Garage—Resulting Fire Spread to Adjoining Building, Which Was Destroyed—Owner of Adjoining Building, Suing for Damages, Must Aver and Prove Negligence.*

1. It was not negligence *per se* for the owners of a garage to have hauled into their building a fifty-gallon tank of "high pressure" gasoline for automobile use in the retail trade, from which an explosion occurred while the owners of the garage were transferring the gasoline from the tank to another vessel.

2. Where, under such circumstances, the garage building is set on fire from the explosion, and the fire spreads and consumes the building on an adjoining lot, an action will not lie for damages resulting therefrom to the owner of said building, without his averring and proving negligence on the part of the owners of the garage in handling the gasoline. *Bradford Glycerine Co. v. Manufacturing Co.*, 60 Ohio State, 560, distinguished.

*Lyne & Kuntz*, for plaintiff.
*Danford & Rogers*, contra.

WEBER, J.

Heard on demurrer to petition.

The petition sets out, in substance, the following facts after averring appointment of defendants as administrators.

Plaintiff says that on and prior to August 16, 1914, he was the owner of a two-story frame dwelling-house situate on Main street in the village of McConnelsville, Morgan county, Ohio; that said dwelling-house was of the value of $2,500 and was located adjacent to and just west of a building then and there occupied by and controlled by the Morgan County Garage Company.

Plaintiff further says that on August 16, 1914, Chester T. Walker and Frank B. Walker were engaged in partnership in the automobile garage business under the firm name of the Morgan County Garage Company, with their principal place of business on Main street in the village of McConnelsville, Morgan county, Ohio; that on August 16, 1914, the said partnership and its servants and employees, at about 3 o'clock P. M., caused to be hauled into said garage building on said Main street, in said village, a fifty-gallon tank filled with high pressure gasoline which had been procured by said partnership near Chesterhill, Morgan county, Ohio; that said gasoline had not been properly prepared for use for automobile garage purposes, but was what is commonly known as "high pressure gasoline," and said gasoline contained a much greater per cent. of gas than gasoline in ordinary use and sale for automobile purposes; and that said gasoline in said fifty-gallon tank was highly explosive and dangerous.

That on said date, while Chester T. Walker and Frank B. Walker and their servants and employees were upon said premises and engaged in said partnership business and while they were transferring said gasoline from said fifty-gallon tank, the said gasoline therein, from some cause unknown to plaintiff, exploded with great force and concussion, and thereby caused said automobile garage and building to burn and be consumed by fire. Plaintiff further says that said fire so kindled by said explosion of said gasoline, spread and extended to said two-story frame building of plaintiff and caused said building to burn and to be consumed and almost wholly destroyed, to plaintiff's damage in the sum of $1,500, and for which amount he prays judgment.

The demurrer is general in form and questions the sufficiency of the petition.

No allegation charging negligence is made and plaintiff relies largely, if not wholly, on the law as declared by our Supreme Court in the case of *Bradford Glycerine Co.* v. *Manufacturing Co.*, 60 Ohio St., 560.

That is a case where an explosion of nitroglycerine occurred at place of storage while the nitroglycerine was being trans-

ferred from a wagon to the magazine, which was more than a mile from the premises of plaintiff which were injured by the concussion. In this case no act of negligence was charged or shown. The Supreme Court laid down the following propositions in the syllabus:

"1. Nitroglycerine is a substance usually recognized as highly explosive and dangerous, the storage of which at any place is a constant menace to the property in that vicinity. And one who stores it on his own premises is liable for injuries caused to surrounding property by its exploding, although he neither violates any provision of the law regulating its storage, nor is chargeable with negligence contributing to the explosion.

"2. A right of action will exist in favor of all property within the circle of danger, and the fact that the property injured was not on premises adjacent to those on which the explosive substance was stored, will not defeat a recovery."

The sole question, therefore, raised by the demurrer is: Must negligence on the part of the management of the garage be pleaded and shown by plaintiff in order that he may recover?

At first glance, and without an examination of the authorities bearing on the question, it would seem that plaintiff had brought himself within the rule laid down in the last mentioned case, as gasoline ordinarily and especially of the properties described in the petition is highly explosive and dangerous.

While there are a number of decisions in Ohio on the subject of explosives and highly dangerous substances, and liabilities growing out of explosions and injuries resulting from the storage and handling of the same, I find no case like the one at bar, and we must ascertain from the adjudicated cases whether or not there is a distinction or difference in the rule of liability between explosions of substances or compounds like nitroglycerine or gunpowder which are kept and used solely for their explosive properties, and those other highly dangerous substances or articles of commerce such as steam, gasoline and electricity, which have great commercial value for many other purposes.

The leading case on the subject is that of *Fletcher* v. *Rylands,* an English case decided in the Exchequer Chamber by Justice

Blackburn and later affirmed by the House of Lords and by that tribunal tersely stated as follows:

"If a person brings, or accumulates, on his land anything, which, if it should escape may cause damage to his neighbor, he does so at his peril. If it does escape and cause damage, he is responsible, however careful he may have been, and whatever precautions he may have taken to prevent the damage."

As stated, our Supreme Court, in *Bradford Glycerine Co.* v. *Manufacturing Co., supra,* has adopted and applied the above doctrine to the storage of nitroglycerine. The same rule was applied in the use of gunpowder in quarrying stone, where the buildings of an adjoining owner were destroyed. *Tiffin* v. *McCormack,* 34 Ohio St., 638.

The case of *Langabaugh* v. *Anderson,* 68 Ohio St., 131, is one in which a tank gave way containing oil; the oil ran under plaintiff's building and down a ravine, where it caught fire. The fire followed the track of the oil and consumed plaintiff's building, who sued for damages.

The court, in *Langabaugh* v. *Anderson,* reviewing the case of *Bradford Glycerine Co.* v. *Manufacturing Co., supra,* p. 145, say:

"The difference between the storage of water, stone, crude oil and nitroglycerine, is marked and easily comprehended, and this point of difference applies in gunpowder cases and other cases arising out of injuries from explosives.

"The latter are at all times, in all places and under all circumstances, dangerous. They are made for their dangerous qualities, and are bought, sold and used as explosives, and hence the owner assumes at once the liability of their accomplishing natural and probable results. Not so as to crude petroleum."

The court then briefly discusses the case of *Gas Fuel Co.* v. *Andrews,* 50 Ohio St., 695, which was an action to recover damages resulting from the escape of natural gas; in which it was held that the gas company was liable although not negligent in regard thereto, but calls attention to the fact that there had been a violation of the statute which imposed on the company the duty of keeping the gas under its control and that such holding was based on the statute.

And in commenting on the case of *Fletcher* v. *Rylands, supra,* Price, J., who delivered the opinion, p. 146, said:

"As yet, no decision of this court has adopted the entire scope of *Fletcher* v. *Rylands,* and while it holds in general a good and wholesome doctrine resting on good morals and sound reason, its application should be made with suitable and necessary limitations."

In *Armstrong* v. *Cincinnati,* 12 C.C.(N.S.), 76; *Armstrong* v. *Cincinnati,* no op., 82 Ohio St., 454, it seems to me that the Supreme Court, in a measure, recedes from its strong position taken in *Bradford Glycerine Co.* v. *Manufacturing Co., supra,* with relation to dangerous and powerful explosive substances, so far as their use in blasting is concerned, by its affirmation of the case in the circuit court, which approved the common pleas in its charge to the jury that:

"It is not negligence *per se* to use explosives for blasting, and a charge to the jury in an action for damages to property from blasting in the neighborhood is not erroneous, where the jury are told that 'the users of such materials, knowing their explosive power and their destructive tendency, are bound to exercise the highest degree of care in their use.'"

The circuit court in deciding this case gives mention that counsel for plaintiff in error rely on *Tiffin* v. *McCormack* and *Bradford Glycerine Co.* v. *Manufacturing Co., supra,* and then distinguishes between the case then under consideration and the Tiffin case by reason of the fact that there was a technical trespass in the latter, while the former case at bar was a suit for damages resulting from heavy blasts and explosions that caused plaintiff's house, cistern, etc., to tremble, crack open and become disintegrated. No distinction whatever is made in the Bradford Glycerine Company case save the constant menace to property in the vicinity by reason of its storage, and in fact the damages in the Armstrong case and the Glycerine Company case resulted from causes quite similar in nature, though not so sudden and direct in results.

Another viewpoint in cases of this nature is: Did the acts of defendant's decedents, in bringing in and handling in the

building gasoline as stated in the petition constitute in themselves, as against the rights of plaintiff, a nuisance *per se*? If so, then plaintiff has a right to recover and his petition is good without averring negligence. If not so, then negligence must be pleaded and proved. See note, *Henderson* v. *Sullivan*, 16 L. R. A. (N. S.), 691.

In *Whittemore* v. *Baxter Laundry Co.*, 181 Mich., 564, the court say:

"We may grant that the storage of gasoline on premises adjacent to or adjoining the premises of another is not a private nuisance *per se*. It might, however, become such, considering the locality, the quantity and the surrounding circumstances, and would not necessarily depend upon the degree of care used in its storage."

To like effect are the notes under this case, among them being a reference to *O'Hara* v. *Nelson*, 71 N. J. Eq., 161, in which it is said:

"That the storage of gasoline does not constitute a nuisance *per se*, and that whether or not it constitutes a nuisance at all depends upon the locality, the quantity and the surrounding circumstances, and the method and manner of keeping and use."

But in considering the authorities outside our state and applying the test of nuisance *per se*, it must not be forgotten that *Bradford Glycerine Co.* v. *Manufacturing Co., supra*, must control so far as it applies to the storage of dangerous explosives used for their explosive properties, notwithstanding the fact that our Supreme Court stands virtually alone in the extent to which it has applied the rule (16 L. R. A. [N. S.], 691, n.). Therefore, if the "high pressure gasoline" mentioned and described in the petition falls within the class of explosives in that case laid down, then the petition is undoubtedly good, otherwise, not.

The quantity of gasoline handled at the time of the explosion being small (only fifty gallons), it can not be seriously contended that it was brought there for storage purposes, but rather for immediate consumption by the retail trade. Notice or

knowledge on the part of defendants' decedents of the increased danger in handling "high pressure" gasoline is not averred.

I believe the case of *Marsh* v. *Railway,* 7 C.C.(N.S.), 405, is of material aid in the solution of this question. It is an electricity case and the main facts appear in the syllabus, which is as follows:

"1. The mere fact that electricity, generated by an electric railroad company, escaped from its trolley wire to one of its span wires; thence to a telephone cable of a telephone company; thence to a telephone cable of another telephone company; thence to a gas pipe in a store building; thence to the lead connection with a gas meter in the basement, which it melted off, igniting the gas, setting fire to the floor above and damaging a stock of goods, does not render all or any of said companies liable in damages to the owner of the goods, in the absence of proof of negligence on the part of one or more of said companies.

"2. Electricity is of a highly dangerous character, but of such common and recognized use in modern civilization that its use and keeping are sanctioned by law, and if injurious consequences flow from its use or keeping, negligence of the user or keeper must be shown to render him liable to one injured by an electric current.

"3. In the absence of a contractual relation between the parties, or of a statute regulating the matter, the doctrine of *res ipsa loquitur* applies only to the case of such highly dangerous things or agencies as are kept or used solely because of their highly dangerous character, and not to electricity, which is classed with steam rather than dynamite."

The circuit court in this case follows the rule and classification of explosives and other dangerous substances adopted in *Langabaugh* v. *Anderson, supra,* as follows:

First, those cases in which a duty is imposed upon the defendant by reason of a contractual relation between the parties.

Second, those cases where a statutory duty has been violated.

Third, where the defendant is keeping or using a highly dangerous thing or agency which is liable to do harm to others if it escapes or is negligently used or handled.

Now, it is quite apparent that the case at bar falls neither within the first class nor the second. It belongs to the third.

"But," says Winch, J., "we find here a distinction pointed out which requires a further classification or subdivision into those which are at all times in all places and under all circumstances dangerous; such as are made, bought, sold and used because of their highly dangerous character, as to which the owner assumes the liability of their accomplishing natural and probable results. And the other subdivision, those of a highly dangerous character, but yet of such common and recognized use in modern civilization that their use or keeping is sanctioned by law, and necessary in many departments of industry, as to which the courts hold that their use being lawful, if injurious consequences flow therefrom, negligence in their use must be shown, to render the defendant liable."

This whole classification and subdivision of these dangerous agencies for the purpose of determining the liabilities of persons who choose to handle them, seem to me to be just and reasonable and in keeping with Ohio adjudications, so far as they have gone.

To which subdivision of the third class of cases, then, does gasoline belong?.

It is not used as an explosive in the sense that nitroglycerine, gunpowder, dynamite and many other nitro-explosive compounds and forcible explosives are used and which belong clearly to the first subdivision.

The use of gasoline has become so common and its utility so generally recognized in the ordinary trades and commercial relations of life that it is looked upon and considered as important, perhaps, as steam, if not electricity. It is the great motive power now in use in the greatest war ever witnessed by mankind, both on land and in the air and also under the sea. It is found in use in almost every manufacturing establishment in our land. It is today used in 100,000 automobiles in Ohio. Its use as fuel is no longer considered a luxury, but a necessity. The comparative danger may be inferred from the fact that we have strict criminal laws controlling the handling and use of explosives falling within the first subdivision covering ten sections of the General Code (Sections 12533-12541) with heavy penalties for violations, while there are but two such sections

(Sections 12565-12566) applying to gasoline, benzine and naptha with light penalties for violations.

We are living in a progressive age. The beauty and beneficence of our common law is its flexibility and adaptability, where required, to the conditions when applied. As stated by Judge Winch in *Marsh* v. *Railway, supra*:

"The law is growing from day to day, as industrial science is growing, so that what may now be considered in the first subdivision of this class, ten years from now, by reason of the advance of the arts, may belong to the second subdivision."

As applied to the case at bar, may not this be literally true?

It therefore appears to this court that gasoline as a dangerous substance or agency falls within the second subdivision, above, and that negligence of defendants' decedents must be alleged and shown to create a liability.

But, it may be urged, that while this is true as to ordinary gasoline, the kind or quality described in the petition is more dangerous and that it therefore falls within the first subdivision. A sufficient answer is, first, it does not belong to the class or group of substances used exclusively for their explosive powers and properties; second, if it is taken from the second subdivision because of its "high pressure" and increasingly dangerous character, then courts are always at sea in the application of the law, for no matter how useful in the arts and trades and sciences the grade of gasoline in question may be, it will always remain an open question as to whether the particular gasoline in question was so highly volatile and dangerous as an explosive as to lift it from the class or subdivision where as ordinary gasoline it belongs and place it in the other group or subdivision. Many standards might thus be established and the law would remain unsettled. Better, rather, that the law of negligence be made the test and let the care in handling be commensurate with the danger involved.

The demurrer to the petition will be sustained.